1  ADAM R.F. GUSTAFSON                         GREGORY ZERZAN
   Principal Deputy Assistant Attorney General    General Counsel
2  ROBERT N. STANDER                          GREGORY COTE
   Deputy Assistant Attorney General          Principal Deputy General Counsel
3  JUSTIN D. HEMINGER                         CHARLES E. ENLOE
   Acting Deputy Assistant Attorney General   Assistant General Counsel
4  JOHN K. ADAMS                              ERIN D. HENDRIXSON
   Chief of Staff & Senior Counsel            Acting Deputy Asst. General Counsel
5  STEVEN D. SHERMER                          U.S. Department of Transportation
   Designated Counsel for Service
6  Senior Attorney                            PETER SIMSHAUSER
   United States Department of Justice        *Chief Counsel*
7  Environment and Natural Resources Division  DYLAN J. VONEIFF
8  950 Pennsylvania Ave., NW                   *Trial Attorney*
   Washington, DC  20530                      National Highway Traffic
9  (202) 532-5045                             Safety Administration
   Steven.Shermer@usdoj.gov
10                                            *Of Counsel*
11 ERIC GRANT
12 United States Attorney
   Eastern District of California
13
14 *Counsel for Plaintiffs*

15                 **IN THE UNITED STATES DISTRICT COURT**
16               **FOR THE EASTERN DISTRICT OF CALIFORNIA**

17
18 UNITED STATES OF AMERICA and
   UNITED STATES DEPARTMENT OF
   TRANSPORTATION,
19
20                 Plaintiffs,              Civil Action No. 2:26-450
21               v.
22 CALIFORNIA AIR RESOURCES BOARD          **COMPLAINT FOR DECLARATORY**
   and STEVEN S. CLIFF, in his official capac-   **AND INJUNCTIVE RELIEF**
23 ity as the Executive Officer of the California
   Air Resources Board,
24
                 Defendants.
25

26     Plaintiffs, the United States of America and the United States Department of Transportation,

27 file this civil action seeking declaratory and injunctive relief against Defendants for adopting and
28

                                        1
                                                              Complaint

enforcing regulations related to fuel economy standards for light-duty vehicles in violation of the Energy Policy Conservation Act, 49 U.S.C. § 32919(a), and the United States Constitution.

## INTRODUCTION

1.      For fifty years, the Energy Policy and Conservation Act (EPCA) has required that an agency within the Department of Transportation—the National Highway Traffic Safety Administration (NHTSA)—establish uniform, nationwide vehicle fuel-economy standards. *See* 49 U.S.C. § 32901 *et seq*. Congress unequivocally stated its preference for national uniformity by expressly and impliedly preempting any state laws and regulations that are "related to fuel economy standards" for vehicles covered by federal fuel economy standards, which include light-duty vehicles. 49 U.S.C. § 32919(a).

2.      Contrary to this statutory framework, Defendant California Air Resources Board (CARB) and its executive officer, Defendant Steven S. Cliff, have adopted and enforced their own state standards for light-duty vehicles. These regulations impose requirements on vehicle manufacturers that limit fleetwide tailpipe carbon dioxide emissions ($CO_2$ standards) on the purported ground of reducing global climate change, Cal. Code Regs. tit. 13, §§ 1961.3 and 1961.3.1, and include zero-emission vehicle (ZEV) mandates that establish a *de facto* market share quota for electric vehicles. Cal. Code Regs. tit. 13, §§ 1962.2 and 1962.2.1.

3.      CARB's $CO_2$ standards and ZEV mandates in these regulations are related to fuel economy standards because reducing or eliminating tailpipe $CO_2$ emissions from internal combustion automobiles effectively increases fuel economy. For example, fuel economy is determined by measuring the amount of $CO_2$ emitted from a vehicle's tailpipe. *See* 49 U.S.C. § 32904(c). As NHTSA and the U.S. Environmental Protection Agency (EPA) have explained: "any rule that limits tailpipe $CO_2$ emissions is effectively identical to a rule that limits fuel consumption." 76 Fed. Reg. 57,106, 57,124-25 (Sept. 15, 2011). Fuel economy standards and $CO_2$ standards are two sides of

the same coin. And a ZEV mandate requires a quota of vehicles that emit no $CO_2$ from their tail-pipes.

4.      CARB's $CO_2$ standards for light-duty vehicles, Cal. Code Regs. tit. 13, §§ 1961.3 and 1961.3.1, and ZEV mandates, *id.* §§ 1962.2 and 1962.2.1, are preempted under 49 U.S.C. § 32919(a) because they relate to fuel economy standards. They should be declared unlawful and unenforceable, and the Defendants should be permanently enjoined from enforcing them.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over the claims in this Complaint under 28 U.S.C. §§ 1331 and 1345.

6.      CARB's $CO_2$ standards for light-duty vehicles and ZEV mandates threaten and harm the sovereign interest of the United States in the supremacy, enforcement, and application of federal law, as specifically enshrined in EPCA. CARB's standards and mandates also undermine and conflict with NHTSA's congressionally assigned role in establishing nationwide, uniform vehicle fuel economy standards. CARB's $CO_2$ standards and ZEV mandates create a patchwork of inconsistent regulation for vehicle and engine manufacturers in an area where Congress imposed a uniform, national approach. The $CO_2$ standards and ZEV mandates also harm the interests of the United States in ensuring American consumers' access to and choice of reliable, affordable motor vehicles.

7.      A favorable ruling granting the relief requested by the United States would redress these harms, which are caused by CARB's $CO_2$ standards for light-duty vehicles and ZEV mandates.

8.      This Court may order the requested declaratory relief under 28 U.S.C. § 2201 and in accordance with Fed. R. Civ. P. 57. Pursuant to 28 U.S.C. § 2201(a), this Court has the authority to declare the legal rights and obligations of the parties with respect to EPCA and CARB's $CO_2$ standards and ZEV mandates that are part of California's Advanced Clean Cars regulations for

Complaint

light-duty vehicles ("ACC I"), which are currently codified in Cal. Code Regs. tit. 13, §§ 1961.3, 1961.3.1, 1962.2, & 1962.2.1.

9.    This Court may also order the injunctive relief requested under the Supremacy Clause, U.S. Const. art. VI, cl. 2; the All Writs Act, 28 U.S.C. § 1651; its authority to hear cases in equity seeking to enjoin violations of federal law; and its inherent equitable powers under Article III. *See Arizona v. United States*, 567 U.S. 387 (2012); *Ex Parte Young*, 209 U.S. 123 (1908); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015); *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 491 n.2 (2010).

10.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants maintain an office and conduct their official duties within this judicial district, and a substantial part of the events or omissions giving rise to this action occurred within this judicial district.

## PARTIES

11.    Plaintiff, the United States of America, is suing on its own behalf and on behalf of its citizens, to vindicate the supremacy of federal law.

12.    Plaintiff, the United States Department of Transportation, is an agency of the Executive Branch that develops and coordinates national transportation policies, among other things.

13.    NHTSA is an operating administration within the Department of Transportation and is a federal executive agency with responsibility for administering EPCA's automobile fuel economy provisions in 49 U.S.C. Chapter 329.

14.    Defendant CARB is a branch of the California Environmental Protection Agency, which is an agency of the State of California. As such, CARB is a political subdivision of the State of California. The agency is tasked with designing, promulgating, and enforcing California's motor vehicle pollution control program. CARB is headquartered in Sacramento, located in the Eastern District of California, and it performs its official duties throughout the State of California.

Complaint

15.     Defendant Steven S. Cliff serves as the Executive Officer of CARB. This suit is brought against Mr. Cliff in his official capacity. Defendant Cliff is responsible, directly and through CARB, for the promulgation, implementation, and enforcement of the $CO_2$ standards in the ACC I regulation. The Executive Officer maintains an office in Sacramento, located in the Eastern District of California, and he performs his official duties in Sacramento.

## LEGAL BACKGROUND

### I.  ENERGY POLICY AND CONSERVATION ACT (EPCA) OF 1975

16.     In 1975, as part of EPCA, Pub. L. 94-163, 89 Stat. 871 (1975), Congress mandated that the Secretary of Transportation, through NHTSA, establish national vehicle fuel economy standards. These standards are commonly referred to as the Corporate Average Fuel Economy (CAFE) program. 49 U.S.C. §§ 322(a)-(b), 32902(a)-(b), 49 C.F.R. § 1.95(a). The CAFE program was intended to provide a "single standard" for motor-vehicle fuel economy. S. Rep. No. 93-526 at 59 (1973). "Fuel economy" is defined as "the average number of miles traveled by an automobile for each gallon of gasoline (or equivalent amount of other fuel) used." 49 U.S.C. § 32901(a)(11).

17.     EPCA directs NHTSA to set average fleet-wide fuel economy standards at the "maximum feasible" level based on its balancing of enumerated statutory factors. 49 U.S.C. § 32902(b), (f). An "average fuel economy standard" means a "performance standard specifying a minimum level of average fuel economy applicable to a manufacturer in a model year." *See id.* § 32901(a)(6). Lawmakers emphasized that fuel economy standards must "be carefully drafted" to improve fuel economy without "unduly limiting consumer choice." H.R. Rep. No. 94-340 at 87.

18.     EPCA establishes that the average fuel economy standard for each fleet of passenger and non-passenger automobiles manufactured for sale in the United States "shall be the maximum feasible average fuel economy level that the Secretary decides that manufacturers can achieve in

Complaint

that model year." 49 U.S.C. § 32902(a).

19.    In establishing EPCA, Congress recognized the relationship between tailpipe limits on $CO_2$ emissions and fuel economy by specifying that fuel economy is measured using test procedures that gauge carbon emissions. *See* 49 U.S.C. § 32904(c); 38 Fed. Reg. 10,868 (May 2, 1973); 85 Fed. Reg. 28,564, 28,567 (May 13, 2020).

20.    EPCA bars NHTSA's consideration of battery electric vehicles in setting fuel economy standards. *See* 49 U.S.C. § 32902(h)(1). Instead, NHTSA is to set standards to be achieved by gasoline- and diesel-fueled vehicles. *See id.* The statute therefore prevents standards, including regulations like CARB's, that require production of vehicles without internal combustion engines.

21.    In accordance with 49 U.S.C. § 32902(a), NHTSA established specific numerical average fuel economy standards through model year 2031 covering passenger cars and light trucks (*i.e.*, light-duty vehicles). *See* 49 C.F.R. §§ 531.5(c), 533.5(a), (j). Passenger cars and light trucks are "automobiles" as defined in 49 U.S.C. § 32901(a)(3).

22.    EPCA vests NHTSA with the authority and responsibility to evaluate the energy, economic, technological, and policy landscape, and to establish authoritative, uniform, and maximum feasible national fuel economy standards that appropriately account for the statutory factors. In so doing, the agency assiduously calibrates the investment that industry is expected to make in improving fuel economy.

23.    Under EPCA, Congress expressly and impliedly preempted states and their political subdivisions from adopting or enforcing any law or regulation "related to" fuel economy standards when a federal fuel economy standard is in effect. 49 U.S.C. § 32919(a). The United States Constitution makes federal law and regulations "the supreme Law of the Land." U.S. Const., art. VI, cl. 2.

24.    Accordingly, state and local governments are preempted from establishing $CO_2$

Complaint

standards and ZEV mandates, which have a scientific and inversely proportional relationship to fuel economy standards and, thus, are related to fuel economy standards.

25.     Over several decades, NHTSA has repeatedly asserted that EPCA preempts certain state emissions standards, including a former California ZEV mandate. *See, e.g.*, 71 Fed. Reg. 17,566, 17,654 (Apr. 6, 2006); 73 Fed. Reg. 24,352, 24,478 (May 2, 2008); 84 Fed. Reg. 51,310, 51,314-15 (Sept. 27, 2019).

26.     In 2019, NHTSA and EPA jointly issued "The Safer Affordable Fuel Efficient (SAFE) Vehicles Rule Part One: One National Program" rule (SAFE I Rule). 84 Fed. Reg. 51,310 (Sept. 27, 2019). The SAFE I Rule finalized regulatory text implementing NHTSA's statutory authority to set nationally applicable fuel economy standards and making explicit that certain state programs, such as California's $CO_2$ standards, are preempted under EPCA.

27.     In 2021, NHTSA repealed the SAFE I Rule, without disputing that state $CO_2$ standards and ZEV mandates are preempted by EPCA. 86 Fed. Reg. 74,236 (Dec. 29, 2021). In issuing the repeal, NHTSA did not disclaim or otherwise change its longstanding position on EPCA preemption. *Id*. at 74,261. The repeal simply asserted that the EPCA preemption provision is "self-executing and capable of direct application to state regulatory activity." *Id.* at 74,253.

## II.  THE CLEAN AIR ACT'S PREEMPTION AND WAIVER PROVISIONS

28.     The U.S. EPA regulates certain emissions from new motor vehicles under the Clean Air Act. That statute also expressly "prohibits states from adopting their own vehicle emissions standards." *Brown v. EPA*, 940 F.3d 1342, 1345 (D.C. Cir. 2019). Section 209(a) provides that "no State shall adopt or attempt to enforce any standard relating to the control of emissions from new motor vehicles or new motor vehicle engines." 42 U.S.C. § 7543(a).

29.     Under Section 209(b), however, California may request a preemption waiver from EPA if certain criteria are met. *See* 42 U.S.C. § 7543(b). Although only California may apply for a

waiver under Section 209(b), other states may adopt and enforce emissions standards for new motor vehicles that, among other things, are identical to a California standard that has received such a waiver. 42 U.S.C. § 7507.

30.     A preemption waiver under Section 209(b) exempts the waiver's recipient only from the Clean Air Act's preemption provision in Section 209(a). Such a waiver has no effect on EPCA preemption. EPCA contains no provision allowing for the waiver of preemption under 49 U.S.C. § 32919(a).

31.     In the SAFE I Rule, EPA withdrew the waiver it had previously issued to California in 2013 for ACC I. The $CO_2$ standards were thus preempted under both EPCA and the Clean Air Act at that time.

32.     In March 2022, EPA rescinded its withdrawal of the waiver for California's ACC I. As explained in more detail below, California has stated that it believes the 2013 preemption waiver is currently in effect, such that its $CO_2$ standards and ZEV mandates in ACC I are not preempted by the Clean Air Act.

## FACTUAL BACKGROUND

### I.    THE DIRECT RELATIONSHIP BETWEEN $CO_2$ STANDARDS, ZEV MANDATES, AND FUEL ECONOMY

33.     Regulating or prohibiting vehicle tailpipe $CO_2$ emissions relates to fuel economy because regulating tailpipe $CO_2$ emissions has an effect on fuel economy. For automobiles that have tailpipes and consume hydrocarbon-based fuel, like gasoline and diesel, tailpipe $CO_2$ emissions and fuel economy are two sides of the same coin.

34.     Reducing tailpipe $CO_2$ emissions from current internal combustion automobiles depends upon reducing fuel consumption, and thus, increasing fuel economy. Vehicle manufacturers reduce tailpipe $CO_2$ emissions through installation of controls like engine technologies,

transmission technologies, accessory technologies, improved vehicle design, and hybrid technologies. These technology and design changes reduce fuel consumption and thus increase fuel economy. Because the available options for reducing tailpipe $CO_2$ emissions increase fuel economy, regulation of $CO_2$ emissions and fuel consumption are equivalent or "related."[1]

35.     Rules limiting or prohibiting tailpipe $CO_2$ emissions are therefore related to fuel economy standards because they directly and substantially affect automobile fuel economy and an automobile manufacturers' average fuel economy. The greater an automobile's fuel economy, the fewer grams of $CO_2$ it will emit per mile, and vice versa. *See, e.g.*, 71 Fed. Reg. at 17,659.

36.     CARB itself has recognized this relationship. *See, e.g.*, Comparison of Greenhouse Gas Reductions for The United States and Canada under U.S. CAFE Standards and California Air Resources Board Greenhouse Gas Regulations, California Air Resources Board (Feb. 25, 2008), at vii (Bullet Point 1: explaining that "[s]ince the California rules are significantly more effective at reducing GHGs than the federal CAFE program, they also result in better fuel efficiency—roughly 43 miles per gallon (mpg) in 2020 for the California vehicle fleet as compared to the new CAFE standard of 35 mpg"), 6-8, and Table 4 (describing "California $CO_2$ Equivalent Emission Standards and estimated fuel economy in California").[2]

37.     Congress understood this relationship between tailpipe limits on $CO_2$ emissions and fuel economy, even specifying in EPCA that fuel economy should be measured using test procedures for gauging carbon emissions. *See* 49 U.S.C. § 32904(c); 38 Fed. Reg. 10,868 (May 2, 1973); 85 Fed. Reg. 28,564, 28,567 (May 13, 2020).

38.     Under the CAFE test procedures, fuel economy is measured using a "carbon-

---

[1] The minor exception is regulating the carbon intensity of fuels, which is not preempted by EPCA.

[2] https://perma.cc/3BH9-J6B8.

Complaint

balance" method that relates the carbon content in the exhaust to the amount of fuel burned during the test. Given this mathematical relationship between $CO_2$ and other carbon emissions and fuel economy, this provides for an accurate assessment of fuel economy, as recognized by Congress in referencing the 1975 test procedure that utilized this approach. *See, e.g.*, 49 U.S.C. § 32904(c); 40 C.F.R. § 600.113-12(h)(1), (o)(1) (gasoline, E10).

39.    EPA used the same carbon-based emissions test method to measure compliance with its own $CO_2$ standards. *See, e.g., id*. § 600.113-12(h)(2), (o)(2) (gasoline, E10). So does California. *See, e.g.*, Cal. Code Regs. tit. 13, § 1961.3(d) (listing CARB's test procedures) and CARB, California 2015 Through 2025 Model Year Criteria Pollutant Exhaust Emission Standards and Test Procedures and 2017 and Subsequent Model Year Greenhouse Gas Exhaust Emission Standards and Test Procedures for Passenger Cars, Light-Duty Trucks, and Medium-Duty Trucks, and Medium-Duty Vehicles at A-1 (August 25, 2022).

40.    ZEV mandates affect corporate average fuel economy by mandating that a portion of vehicles in a manufacturer's fleet release no $CO_2$ emissions from the tailpipe. This has the effect of improving the fuel economy of the manufacturer's fleet. A ZEV mandate also requires an automaker to design, produce, and deliver for sale ZEVs regardless of consumer demand, unless the automaker buys credits from another manufacturer.

41.    For these and other reasons, ZEV mandates "have just as [ ] direct and substantial [an] impact on corporate average fuel economy as regulations that explicitly eliminate carbon dioxide emissions." 84 Fed. Reg. 51,310, 51,320 (Sept. 27, 2019).

42.    CARB has acknowledged that ZEV mandates affect fuel economy across manufacturers' fleets.[3]

---

[3] https://perma.cc/3BH9-J6B8.

Complaint

43.     Other states have recognized the link between reducing greenhouse gas emissions from automobile tailpipes, ZEV mandates, and fuel economy. For example, Minnesota concluded that "[t]he primary way manufacturers reduce [greenhouse-gas] emissions to comply with these standards is to improve the fuel economy of their vehicles." Minnesota Pollution Control Agency, Statement of Need and Reasonableness; Proposed Revisions to Minnesota Rules, Chapter 7023, Adopting Vehicle Greenhouse Gas Emissions Standards (Clean Cars Minnesota) at 72 (Dec. 2020) (emphasis added); *see also id*. at 65 (projecting fuel savings from the rules) and 78 ("[Greenhouse-gas] emissions standards generally result in improvements in fuel economy.").[4]

## II. CALIFORNIA'S ADOPTION AND ENFORCEMENT OF $CO_2$ STANDARDS AND ZEV MANDATES UNDER ACC I RELATED TO VEHICLE FUEL ECONOMY

44.     Defendants have taken a series of actions to adopt and enforce tailpipe $CO_2$ emission standards and ZEV mandates that are preempted by EPCA. Defendants will continue these unlawful actions unless the Court intervenes.

45.     In 2012, CARB adopted regulations to control motor vehicle emissions through "the 2025 and subsequent model years, collectively called 'Advanced Clean Cars'" ("ACC I").[5] The greenhouse-gas emissions limits under ACC I "remain in force indefinitely into the future" and recent model years remain administratively open. *See Diamond Alternative Energy, LLC v. Environmental Protection Agency*, 606 U.S. 100, 107 (2025).

46.     ACC I is codified at Cal. Code Regs. tit. 13, § 1961.3 and includes increasingly stringent $CO_2$ standards that are related to fuel economy for light-duty vehicles from 2017 through "2025 and subsequent" model years. For example, for certain passenger cars, ACC I requires the following $CO_2$ exhaust target values:

---

[4] https://perma.cc/QCL2-2L2D.

[5] https://perma.cc/NW2X-56XS.

Complaint

| Model Year | $CO_2$ Target Value (grams/mile) |
|---|---|
| 2017 | 195.0 |
| 2018 | 185.0 |
| 2019 | 175.0 |
| 2020 | 166.0 |
| 2021 | 157.0 |
| 2022 | 150.0 |
| 2023 | 143.0 |
| 2024 | 137.0 |
| 2025 and subsequent | 131.0 |

47.    CARB requires manufacturers of light-duty vehicles to demonstrate compliance with these $CO_2$ standards annually, both at the test group level and the fleet-wide level. Each model year, every manufacturer must perform specific calculations, certify the results, and report those results to CARB. These requirements are separate from and in addition to requirements for compliance with federal average fuel economy standards under 49 U.S.C. Chapter 329.

48.    If a manufacturer is not in compliance with CARB's $CO_2$ standards, the manufacturer may be subject to civil penalties.

49.    CARB also requires ZEV mandates under Cal. Code Regs. tit. 13, § 1962.2, which requires that a certain percentage of the cars and light trucks that each automaker delivers for sale in California each year have zero tailpipe emissions—a *de facto* market-share quota for electric vehicles. *See Diamond Alt. Energy*, 606 U.S. at 104-105. For 2025, the ZEV mandate imposes a 22-percent ZEV requirement. Cal. Code Regs. tit. 13, § 1962.2.

50.    In 2022, CARB adopted Advanced Clean Cars II regulations (ACC II), which increased the stringency of $CO_2$ standards and ZEV mandates for light-duty vehicles. EPA granted a preemption waiver under section 209(b) of the Clean Air Act for ACC II in December 2024. Congress then enacted a joint resolution under the Congressional Review Act in June 2025 that disapproved of the ACC II waiver, thereby ensuring the preemption waiver for ACC II has "no force or

12                                                                        Complaint

effect," H.J. Res. 88 (119th Congress), and that EPA cannot grant another preemption waiver that is "in substantially the same form." 5 U.S.C. § 801(b)(2).

51.     In September 2025, after the ACC II waiver was disapproved by Congress, CARB initiated "emergency" vehicle emissions rulemaking, reinstating earlier-adopted state standards that it asserts are subject to operative waivers. *See* CARB Emergency Vehicle Emissions Rulemaking Public Notice, Dkt. 73-33 at 6–7 ("Emergency Rule"). CARB claims that its emergency rulemaking "clarif[ies] the law to confirm that, at a minimum, CARB's earlier-adopted standards, which have extant federal preemption waivers not subject to the recent congressional resolutions, are operative." *Id*. at 2–3. Such standards that purportedly have a waiver include those in ACC I.

52.     The Emergency Rule purporting to adopt ACC I standards is codified at Cal. Code Reg., tit. 13, § 1961.3.1 for $CO_2$ standards and Cal. Code Regs. tit. 13, §§ 1962.2 and 1962.2.1 for ZEV mandates.

53.     Section 1961.3.1 includes the same increasingly stringent $CO_2$ standards from 2017 through "2025 and subsequent" model years as those under Cal. Code Regs. tit. 13, § 1961.3 so that CARB may continue to regulate fuel economy for light-duty vehicles.

54.     CARB's notice of its Emergency Rule also includes a provision that purports to automatically increase the stringency of ACC I's $CO_2$ standards by incorporating the invalidated ACC II regulations, if California obtains judicial relief in separate litigation under the Clean Air Act. *See* CARB Emergency Rule, Dkt. 73-33 at 6 ("CARB may enforce the more recently adopted [$CO_2$ standards of ACC II] to the extent permitted by law, in the event a court of law holds invalid the resolution purporting to disapprove that waiver.").

55.     Thus, the relevant ACC I regulations CARB is currently enforcing include fleetwide $CO_2$ emission limitations applicable to, among other vehicles, new passenger cars and light trucks that are related to fuel economy for light-duty vehicles. Cal. Code Regs. tit. 13, §§ 1961.3, 1961.3.1.

Complaint

For model year 2025 and subsequent model years, these standards require manufacturers to meet a footprint-based fleet-wide average $CO_2$ limit, varying between 131 and 179 grams of $CO_2$ per mile for passenger cars and between 159 and 277 grams of $CO_2$ per mile for light trucks. *Id.*

56.     CARB also extended its ZEV mandates in its Emergency Rule, requiring Defendant Cliff to "certify new 2018 and subsequent model year passenger cars, light-duty trucks, and medium-duty vehicles as ZEVs, vehicles that produce zero exhaust emissions of any criteria pollutant (or precursor pollutant) or greenhouse gas, excluding emissions from air conditioning systems, under any possible operational modes or conditions." Cal. Code Regs. tit. 13, §§ 1962.2, 1962.2.1.

57.     CARB is committed to enforcing its $CO_2$ standards and ZEV mandates under ACC I. For example, on August 25, 2025, CARB announced via a Manufacturers Advisory Correspondence (MAC-ECCD-2025-08) that, in order to sell new vehicles in California, manufacturers of light-duty vehicles and engines who did not certify in accordance with CARB's invalid ACC II regulations must instead certify that they complied with either: (i) the ACC I regulations; or (ii) EPA vehicle emissions standards "as those regulations are currently codified."[6]

58.     On March 6, 2026, CARB proposed re-adopting the Emergency Rule for an additional 90 days, until June 30, 2026. In that proposal, CARB stated that it "has made substantial progress in finalizing a regular rulemaking to permanently adopt the" Emergency Rule.[7]

59.     CARB is also set to enforce $CO_2$ standards for light-duty vehicles under future iterations of Advanced Clean Cars rules. To further Governor Newsom's Executive Order N-27-25, CARB announced its intent to develop and implement a third set of Advanced Clean Cars

---

[6] EPA's vehicle $CO_2$ emissions standards have since been repealed. *Rescission of the Greenhouse Gas Endangerment Finding and Motor Vehicle Greenhouse Gas Emission Standards Under the Clean Air Act*, 91 Fed. Reg. 7,686 (Feb. 18. 2026).

[7] https://ww2.arb.ca.gov/sites/default/files/barcu/regact/2025/emergencyvehemissions/readopt-notice1.pdf.

regulations ("ACC III"). According to CARB, "CARB staff has begun a new phase of work that includes light-duty vehicle emissions standards to reduce criteria air pollutant, greenhouse gas, and toxic emissions . . . " *See* CARB, Light-duty Vehicle Programs: Regulations & Policies.[8] On November 6, 2025, CARB affirmed that it "remains committed to . . . [m]oving forward on the next round of light-duty vehicle emissions standards for the 2030s and beyond." CARB, Clean transportation drove California's emissions drop in 2023, Press Release 25-36 (Nov. 6, 2025).[9] Notwithstanding the fact that these $CO_2$ standards also would be preempted under EPCA, CARB is in the process of developing these regulations and has been conducting hearings and workshops. This regulation, just like ACC I and ACC II, relates to or will relate to fuel economy within the meaning of 49 U.S.C. § 32919(a).

## CLAIMS FOR RELIEF

### COUNT I – $CO_2$ Standards Under Cal. Code Regs., tit. 13, §§ 1961.3 & 1961.3.1

### (Preemption under EPCA, 49 U.S.C. § 32919(a), and Violation of the Supremacy Clause)

60.    The foregoing allegations are realleged and incorporated by reference as if set forth fully herein.

61.    There is an actual controversy between Plaintiffs and Defendants with respect to the validity of the $CO_2$ standards that are part of CARB's ACC I regulations and the Emergency Rule.

62.    The Supremacy Clause of the United States Constitution provides that federal law "shall be the supreme Law of the Land," notwithstanding any contrary state law or regulation. U.S. Const. Art. VI, cl. 2.

63.    The $CO_2$ standards for passenger cars and light-duty trucks that are part of CARB's ACC I regulations and Emergency Rule are preempted by the Constitution and federal law, and

---

[8] https://perma.cc/U3VP-A2SY.

[9] https://perma.cc/Y9T2-J6BP.

Complaint

thus the Court should invalidate them and enjoin their application and enforcement.

64.     EPCA broadly and expressly preempts any state or political subdivision thereof from "adopt[ing] or enforc[ing] a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under" EPCA. 49 U.S.C. § 32919(a)

65.     Regulation of tailpipe $CO_2$ emissions is related to regulation of fuel economy, because "any rule that limits tailpipe $CO_2$ emissions is effectively identical to a rule that limits fuel consumption." 76 Fed. Reg. at 57,124-25.

66.     NHTSA is required to establish an average fuel economy standard for each fleet of light-duty passenger and non-passenger automobiles manufactured for sale in the United States, including in California. 49 U.S.C. § 32902(a). NHTSA's standards, which are currently in effect through model year 2031, are specified at 49 C.F.R. §§ 531.5(c), 533.5(a), (j). These regulations specify average fuel economy standards that cover fleets of light-duty passenger and non-passenger automobiles for model years through 2031 within the meaning of 49 U.S.C. § 32919(a).

67.     CARB's $CO_2$ standards limit tailpipe $CO_2$ emissions for fleets of passenger and non-passenger automobiles for model years 2017 through "2025 and subsequent" model years. Cal. Code Reg., tit. 13, §§ 1961.3, 1961.3.1.

68.     CARB's Emergency Rule recodifies the $CO_2$ standards of ACC I.

69.     By adopting its $CO_2$ standards, CARB has impermissibly "adopt[ed] . . . regulation[s] related to fuel economy standards or average fuel economy standards" that are expressly preempted by 49 U.S.C. § 32919(a).

70.     By enforcing its $CO_2$ standards, CARB is impermissibly "enforc[ing] . . . regulation[s] related to fuel economy standards or average fuel economy standards" that are expressly preempted by 49 U.S.C. § 32919(a).

Complaint

71.   By adopting $CO_2$ standards in the Emergency Rule, CARB has impermissibly "adopt[ed] . . . regulation[s] related to fuel economy standards or average fuel economy standards" that are expressly preempted by 49 U.S.C. § 32919(a).

72.   By enforcing $CO_2$ standards in the Emergency Rule, CARB is impermissibly "enforc[ing] . . . regulation[s] related to fuel economy standards or average fuel economy standards" that are expressly preempted by 49 U.S.C. § 32919(a).

73.   EPCA requires the Department of Transportation in setting fuel economy standards to strike a balance between the Nation's need to conserve energy and other factors, including "technological feasibility," "economic practicability," and "the effect of other motor vehicle standards of the Government on fuel economy." 49 U.S.C. § 32902(f).

74.   State standards stand as an obstacle to the accomplishment of the full purposes of Congress where they alter the policy balance that EPCA struck, impose requirements that frustrate the methods Congress chose to achieve its goals, and prohibit vehicles that the federal fuel economy scheme allows.

75.   California's $CO_2$ standards, as adopted in the Emergency Rule, undermine uniform operation of the federal fuel economy scheme, upset Congress's intended balance, and are therefore preempted under principles of obstacle preemption.

76.   Until the Court declares Defendants' $CO_2$ standards in ACC I and the Emergency Rule preempted, unlawful, and unenforceable, and enjoins Defendants from enforcing and adopting them, these laws will continue to harm the legally protected interests of the United States.

77.   The United States has sovereign interests in the supremacy of federal law under Article VI of the U.S. Constitution.

78.   The United States has legally protected interests under the Constitution and EPCA in ensuring uniform, nationwide fuel economy standards. Defendants' actions alleged herein harm

Complaint

those interests and will continue to do so unless the requested declaratory and injunctive relief is granted.

79.    Injunctive relief is necessary to prevent the Defendants from enforcing the challenged Advanced Clean Cars regulations and adopting new ones, such as ACC III.

**COUNT II – ZEV Mandates Under Cal. Code Regs. tit. 13, §§ 1962.2 and 1962.2.1**

**(Preemption under EPCA, 49 U.S.C. § 32919(a), and Violation of the Supremacy Clause)**

80.    The foregoing allegations are realleged and incorporated by reference as if set forth fully herein.

81.    There is an actual controversy between Plaintiffs and Defendants with respect to the validity of the ZEV mandates that are part of CARB's ACC I regulations and Emergency Rule.

82.    CARB's ZEV mandates include requirements that for 2018 and subsequent model years, a portion of each manufacturer's fleet have zero tailpipe $CO_2$ emissions. Cal. Code Regs. tit. 13, §§ 1962.2 & 1962.2.1.

83.    The ZEV mandates for passenger cars and light-duty trucks that are part of CARB's ACC I regulations and Emergency Rule are preempted by the Constitution and federal law, and thus the Court should invalidate them and enjoin their application and enforcement.

84.    EPCA broadly and expressly preempts any state or political subdivision thereof from "adopt[ing] or enforc[ing] a law or regulation related to fuel economy standards or average fuel economy standards for automobiles covered by an average fuel economy standard under" EPCA. 49 U.S.C. § 32919(a)

85.    The ZEV mandates are "related to" fuel economy standards and average fuel economy standards. The regulations mandate sales of ZEVs, defined as "vehicles that produce zero exhaust emissions of any . . . greenhouse gas." Cal. Code Regs. tit. 13, § 1962.2(a). In other words, a ZEV is an automobile that consumes no hydrocarbon-based fuel. And the ZEV mandates require

18                                                            Complaint

decreasing the market share of automobiles that do consume hydrocarbon-based fuel. The ZEV mandates are therefore related to fuel economy and average fuel economy standards because the purpose is to reduce the fuel consumed by California's automotive fleet per mile.

86.     Accordingly, because ZEV mandates adopted by CARB are designed to limit $CO_2$ tailpipe emissions from automobiles, both individually and on a fleetwide basis, they are "related to fuel economy standards" and "average fuel economy standards." They are therefore expressly preempted by EPCA.

87.     The ZEV mandates also conflict with Congress's determination that the "maximum feasible" fuel economy standard should be set without regard to ZEVs. *See id*. 49 U.S.C. §§ 32901(a)(1)(J), (a)(8), 32902(a), (h)(1). In fact, Congress prevents NHTSA from considering the fuel economy of vehicles that run on "alternative fuel[s]" (such as electricity) when setting the "maximum feasible" fuel economy standards. *See id*. In this way, Congress prevented NHTSA from effectively mandating ZEVs by setting standards so stringent that they could only be met by producing such vehicles. And Congress provided incentives for the production of vehicles that run on a range of alternative fuels, including electricity. *Id.* at 32905. Congress therefore decided that electric vehicles should be one of many optional compliance flexibilities, not a mandate. The ZEV mandates conflict with that deliberate congressional choice by mandating electric vehicles anyway.

88.     Put differently, ZEV mandates stand as an obstacle to the accomplishment of the full purposes of Congress because they alter the policy balance that EPCA struck, impose requirements that frustrate the methods Congress chose to achieve its goals, and prohibit vehicles that the federal fuel economy scheme allows. The ZEV mandates undermine uniform operation of the federal fuel economy scheme, upset Congress's intended balance, and are therefore preempted under principles of obstacle preemption.

89.     Until the Court declares Defendants' ZEV mandates in ACC I and the Emergency

Rule preempted, unlawful, and unenforceable, and enjoins Defendants from enforcing and adopting them, these laws will continue to harm the legally protected interests of the United States.

90.    Injunctive relief is necessary to prevent the Defendants from enforcing the challenged Advanced Clean Cars regulations and adopting new ones, such as ACC III.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States respectfully requests that this Court:

91.    Declare that the $CO_2$ standards in Cal. Code Regs., tit. 13, §§ 1961.3 & 1961.3.1, and all similar $CO_2$ standards, are preempted, unlawful, and unenforceable under 49 U.S.C. § 32919(a).

92.    Permanently enjoin Defendants from taking actions to adopt or enforce CARB's $CO_2$ standards under the ACC I regulations, *see* Cal. Code Regs., tit. 13, §§ 1961.3 & 1961.3.1, as well as permanently enjoin Defendants from adopting or enforcing new regulations related to fuel economy, such as tailpipe $CO_2$ emissions standards, and any other methods for calculating compliance with corporate average fuel economy standards that are inconsistent with 49 U.S.C. § 32901 *et seq*.

93.    Declare that the ZEV mandates in Cal. Code Regs. tit. 13, §§ 1962.2, 1962.2.1, and all similar ZEV mandates, are preempted, unlawful, and unenforceable under 49 U.S.C. § 32919(a).

94.    Permanently enjoin Defendants from taking actions to adopt or enforce CARB's ZEV mandates under the ACC I regulations, *see* Cal. Code Regs. tit. 13, §§ 1962.2, 1962.2.1, as well as permanently enjoin Defendants from adopting or enforcing new regulations related to ZEV mandates that are inconsistent with 49 U.S.C. § 32901 *et seq*.

95.    Award the United States its costs, fees, and disbursements in this action.

96.    Award such other and further relief as the Court may deem just and proper.

Complaint

1

2
                                           Respectfully submitted,

3
                                           ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

4
ROBERT N. STANDER
Deputy Assistant Attorney General

5
JUSTIN D. HEMINGER
Acting Deputy Assistant Attorney General

6
JOHN K. ADAMS
Chief of Staff & Senior Counsel

7

8
                                             /s/ Steven Shermer

          Designated Counsel for Service:  STEVEN D. SHERMER

9
Senior Attorney
District of Columbia Bar No. 486394

10
Environmental Enforcement Section
Environment and Natural Resources Division

11
United States Department of Justice

12
P.O. Box 7611
Washington, DC  20044-7611

13
(202) 532-5045
Steven.Shermer@usdoj.gov

14

15
ERIC GRANT
United States Attorney

16
Eastern District of California

17
*Attorneys for the Plaintiffs*

18
OF COUNSEL:

19
GREGORY ZERZAN
General Counsel

20
GREGORY COTE
Principal Deputy General Counsel

21
CHARLES E. ENLOE
Assistant General Counsel

22
ERIN D. HENDRIXSON
Acting Deputy Assistant General Counsel

23

24
PETER SIMSHAUSER
Chief Counsel

25
DYLAN J. VONEIFF
Trial Attorney

26
National Highway Traffic Safety Administration

27

28

Complaint